MENZO W. FINN *vs.* JOSEPH S. CLARK.

If goods are sent by a carrier, and neither the bill of lading nor the direction upon them enables him to deliver them to the purchaser, and they are lost in consequence, the purchaser may recover back the price paid by him to the vendor for the same; nor will he be presumed to have assented to or waived the vendor's omission, from proof that he received a copy of the imperfect bill of lading before the payment was made, and that he thereafter made diligent inquiry to find the goods.

CONTRACT brought to recover the price of certain shingles sold and delivered. One defence was a claim by way of set-off, for money paid by the defendant to the plaintiff upon a draft for the price of another lot of shingles which the defendant never received.

At the trial in the superior court, before *Putnam*, J., the defendant introduced evidence to show that in May 1861 he lived in Southampton, Massachusetts, and ordered a lot of shingles from the plaintiff by a letter addressed to him at Olean, New York, where the plaintiff lived. He afterwards received from the plaintiff a letter dated at Olean, May 13th 1861, inclosing a bill and a bill of lading of the shingles, which, the letter said, were "shipped you this day, as per your order." The former contained a charge for freight paid on the same to Greenbush, and for paying boatman to tow across the river at Greenbush; showing the balance due to be $789.82. The bill of lading was as follows: "Olean, May 13th, 1861. Shipped for account of M. W. Finn on board canal boat W. White of Niagara, N. Y. whereof James Smith is master for the present trip, as follows:

| Pieces. | Feet. | Tons. | Lumber. |
|---|---|---|---|
| 100 Bunches | 50 M. of 18 in. | Sorted Shaved Shingle, | marked J. S. C. extra. |
| 150 " | 75 " " | No. 1 " | " J. S. C. |
| 360 " | 90 " " | Extra Sawed " | " J. S. C. extra. |

In good order to be delivered in like good order without delay to the Great Western Rail Road Company or their assignee at Greenbush, N. Y. Assignee to pay freight on the delivery at the rate of seventy-five cents per M. for shaved shingles and 62½ cts. per M. for the sawed shingles and $2 50-100 for towing, less amount advanced master one hundred and fifty-two and 50-100 dollars. M. W. Finn, Consignor. James Smith, Master."

On the 21st of May, after the defendant had received the above letter and bills, he received and accepted a draft for the balance of the bill, after deducting certain credits, and paid the same at maturity.

The shingles referred to came into the possession of the Western Railroad Company at Greenbush, marked as stated in the bill of lading, but with no other mark or direction upon them, and remained there until the 5th of July 1861, when they were destroyed by fire at the time of the burning of the freight depot of that company at Greenbush.

The defendant offered evidence of similar purchases of shingles by him of the plaintiff at various times since 1858, in all

of which instances they had come properly directed. It also appeared that the defendant made constant inquiry for these shingles at the railroad depot in Westfield, (adjoining Southampton,) where he received his letters, in May and June 1861, and wrote three times to the agent of the Western Railroad Company at Greenbush, inquiring if they had arrived there, but received no information respecting them, except by a letter dated June 25th which did not reach the defendant until after the fire. On the 20th of June the defendant wrote to the plaintiff as follows : " I received yours of the 6th inst. in due time — have been waiting since for the shingles to get here before I wrote, but have heard nothing from them yet. There is but little doing here in the lumber line. If we don't do more in the fall, the shingles on the road will last me until winter. I shall make nothing on them, as they are buying in Albany and selling as cheap as I can." There was no evidence of any complaint by the defendant to the plaintiff that the shingles were not properly directed, and no claim was made to recover back the amount paid upon the draft until the defendant was called on to pay the amount of the bill now in suit, which was dated in May 1862.

Upon this evidence the judge ruled that the defendant was not entitled to recover back the amount paid by him upon the draft, and a verdict was accordingly returned for the plaintiff for the full amount claimed by him ; and the defendant alleged exceptions.

*H. B. Stevens,* for the defendant. There being no proper directions for the transportation of the shingles, there was no sale. *Orcutt* v. *Nelson,* 1 Gray, 536. *Putnam* v. *Tillotson,* 13 Met. 517. *Stanton* v. *Eager,* 16 Pick. 467. *Buckman* v. *Levi,* 3 Camp. 414. The circumstances shown constitute no waiver on the part of the defendant. The defendant always supposed that the plaintiff had shipped the shingles according to the order.

*W. G. Bates & M. B. Whitney,* for the plaintiff. The fact that the defendant lived in Southampton and wrote from there does not imply a request to the plaintiff to direct the shingles to him at that place, or bind the plaintiff so to direct them. The plaintiff's letter of May 13th informed the defendant of the mode in

which they were directed. The acceptance and payment of the draft are decisive proof of the defendant's assent to this mode of direction, and rendered the sale complete at Olean. *Orcutt* v. *Nelson*, 1 Gray, 536. *Butler* v. *Hildreth*, 5 Met. 49. *Bayley* v. *Bryant*, 24 Pick. 198, 203. *Clement* v. *Jones*, 12 Mass. 60 *Chapman* v. *Morton*, 11 M. & W. 534. The defendant's subsequent acts, his endeavors to obtain the shingles, his speaking of them in his letters as his own, his neglect to make any complaint to the plaintiff or demand back the money which he had paid, so as to enable the plaintiff to make due and seasonable inquiry, and to assert his rights after their loss, are further proof of such assent and ratification. *Arnold* v. *Richmond Iron Works*, 1 Gray, 434. *Brigham* v. *Peters*, Ib. 139, 147. *Thayer* v. *White*, 12 Met. 343. *Allis* v. *Billings*, 6 Met. 415.

DEWEY, J. The defendant accepted and paid a draft drawn by the plaintiff on him for the sum of $789.82. For this payment the defendant alleges he has received no consideration, and that this amount is justly due to him from the plaintiff; and he has filed this claim in set-off to the demand of the plaintiff. If he establishes his claim, such indebtedness may properly be made a subject of set-off under Gen. Sts. *c.* 130, § 3, as it will be a demand " for money paid, or money had and received," within the words of the statute.

It is conceded that this sum was paid under the supposition that the plaintiff had forwarded to the defendant a certain quantity of shingles that had been ordered by the latter. It is admitted, if all had been done by the plaintiff that was necessary to designate the person to whom and the place to which the same were ordered to be forwarded, the sale would have been complete at Olean, and he would have been discharged from further liability.

But it is said that the plaintiff failed to make a proper consignment of the shingles to the defendant, and forwarded them by a canal boat to be delivered to the Western Railroad Company at Greenbush, without naming the person to whom or the place where they were to be further conveyed by that company and that by reason of such omission the shingles remained

at Greenbush for many days, and while thus there on storage were casually destroyed by fire.

We can have no doubt as to the duty of the vendor thus forwarding goods to his vendee, to furnish to the carrier to whom he commits the goods for transportation proper bills of lading and entries or marks indicating the person to whom and the place to which they are to be carried.

There was a failure in this bill of lading to name the consignee or his place of business or residence, or to give any indication to the Western Railroad Company who were to receive the goods, as to the place to which they were to be forwarded by them. This omission prevented the goods from being forwarded in the ordinary manner and time to the vendee, and eventually was the cause of their entire loss. Taking these facts alone, it would be quite clear that this loss should fall on the plaintiff, and that the money paid by the defendant was paid without consideration, and the defendant would be entitled to recover the same as money had and received to his use.

But it is urged that the defendant had the means of knowing of this omission of the name of the consignee and his place of residence before he accepted the draft, inasmuch as concurrently with it he received a copy of the bill of lading which the plaintiff had caused to be delivered to the master of the canal boat at Olean, and that he might have seen that there was upon it no name of a consignee, or place of his residence. To this it is answered that the defendant might reasonably assume that the proper directions as to the person to whom and the place to which the shingles were to be forwarded would be given in some form, and especially he might do so as the bill of lading was enclosed in a letter from the plaintiff, saying that the shingles were " shipped you this day as per your order." The order of the defendant was dated at Southampton. He also received his letters at Westfield, an adjoining town, and it was there that various previous consignments to the defendant of similar articles had been duly directed as the place of delivery.

The case of *Quimby* v. *Carr*, 7 Allen, 417, is very strong as to the point that the defendant should not suffer by reason of his

not discovering an error which the plaintiff had made. The plaintiff has no right to assume that the defendant might not have failed, as well as himself, to notice this omission. To pass this property to the vendee there must not only have been a delivery of the same to the carrier, but it must be a delivery in accordance with the order of the person directing the goods to be sent to him. *Downer* v. *Thompson*, 2 Hill, (N. Y.) 137.

The omission of the plaintiff to forward the goods with proper directions as to the consignee and the place of delivery authorized the defendant to treat the alleged sale as one never perfected, and to recover back the money paid upon the draft of the plaintiff, founded upon such alleged sale and delivery of the shingles.

This right to treat the sale as a nullity was not lost by reason of the subsequent acts of the defendant in inquiring for the shingles at Westfield, writing to the agent of the Western Railroad Company at Greenbush, or by his letter of June 20th to the plaintiff. It does not appear that the defendant actually knew the reason why the shingles had not been forwarded to Southampton, until he was apprised by the letter of the agent of the Western Railroad Company of June 28th.

The delay in making a demand upon the plaintiff for reimbursement does not conclude the defendant, if his original right is clearly established.

This is a case of a loss originally occasioned by the negligence of the plaintiff; and as the plaintiff has been in no way prejudiced by the acts of the defendant subsequent to this failure of duty on his part, we see no sufficient ground to authorize a jury to find an assent on the part of the defendant to the manner in which the plaintiff had executed the order and forwarded the shingles. *Exceptions sustained.*