UNITED STATES of America for the use
and benefit of NATIONAL U. S.
RADIATOR CORPORATION

v.

D. C. LOVEYS COMPANY, A. Belanger
& Sons, Inc., and Aetna Casualty &
Surety Company.

No. 58–64.

United States District Court
D. Massachusetts.

May 21, 1959.

Alfred Sigel, Boston, Mass., for plaintiff.

Morris Michelson, Boston, Mass., for defendants D. C. Loveys Co. and A. Belanger & Sons, Inc.

Edward O. Proctor, Boston, Mass., for defendant Aetna Casualty & Surety Co.

ALDRICH, District Judge.

This is an action under the Miller Act, 40 U.S.C.A. §§ 270a–270d, by a manufacturer of air-conditioning coils. In February, 1956 plaintiff received an order for eight coils from the defendant, A. Belanger & Sons, Inc., hereinafter called defendant, a subcontractor of the defendant D. C. Loveys Company, on a government building contract. The order, which was submitted on defendant's form, bore the following recitation: "According to Plans & Specifications & Subject to Engr's Approval $2213. frt. Allowed." Prior to the submission of the order plaintiff had delivered to defendant a four-page brochure of prices, the first page of which was entitled "Conditions of Sale." Prominently listed, among others, were the following terms:

"Prices shown in published price lists include domestic crating F. O. B. factory at Los Angeles, California, with full freight allowed to nearest recognized freight depot * * *

"We are not responsible for damage to equipment in transit. Purchasers are warned against receipt-ing for equipment before making careful inspection."

In March, 1956 defendant notified plaintiff that the plans and specifications for its units had been approved by the government engineers. I find that plaintiff reasonably understood from this that it was to ship thereafter at its convenience. It shipped the coils on May 17. It is possible that plaintiff misunderstood, and that defendant did not expect such early shipment, but I find that no harm resulted from this. (Nor did defendant refuse to accept the goods, or reject them on that basis.) The coils arrived on June 1, packed in three separate crates. The crate containing the three largest coils showed considerable external damage, and two of the coils no longer met the specifications. Defendant spent a week endeavoring to see if they could be repaired to the satisfaction of the government, and then learned that the government would not accept repaired goods. It then notified the plaintiff. The plaintiff replied that the coils had become the property of the defendant on shipment, and that it was up to the defendant to make claim against the carrier for the transit damage. Plaintiff was given to understand that such claim had been filed.[1]

In September the defendant ordered two replacement coils. Although it had threatened to return the damaged coils, it did not do so. There was no understanding that the new coils were not to be paid for. The order was again made on defendant's form, but plaintiff transferred it to its own form upon receipt, and sent a copy as an acknowledgement. On the back of this form were the disclaimer of seller's responsibility for transit damage and the warning against receipt of damaged material that had appeared on the original price list. This second order suffered essentially the same transit damage as the first. It was received by the defendant with knowledge thereof on October 31. However,

---

1. In point of fact, through some oversight, defendant failed to make timely claim, and all rights against the carrier have been lost.

this particular shipment had been made on sight draft, and defendant had already paid therefor. This is the only payment it has made for anything. The defendant claims it owes nothing for these two coils, and nothing for the three original large coils, and that it may apply part of the payment it made on the sight draft to the five other original coils (a smaller bill) and counterclaims for a return of the balance of said payment.[2]

■ With respect to the two damaged coils in the first shipment defendant resists payment on three grounds. The first is that because the freight was prepaid, title did not pass until the goods arrived at their destination, and the risk of loss or damage during transit remained upon the seller. Uniform Sales Act, Mass.G.L. c. 106, § 21, Rule 5, § 24.[3] However, it is not necessary to determine whether this provision for the prepayment of freight would be sufficient to overcome the usual commercial understanding that title passes upon delivery to the carrier where the terms are F.O.B. seller's factory. See Mass.G.L. c. 106, § 21, Rule 4(2), § 35(1); Twitchell-Champlin Co. v. Radovsky, 207 Mass. 72, 92 N.E. 1038. Section 24 correlates risk of loss to the passage of title only "unless otherwise agreed." Here there was advance notice given to the defendant by the printed Conditions of Sale that damages incurred in transit would be at the risk of the buyer. Defendant's order accepted this.

Defendant's second argument is that the shipment was made prior to request for delivery. On the basis of the facts previously found, it is without merit.

Thirdly, defendant states that the damaged coils were improperly packaged and that the risk of loss was thereby shifted back to the plaintiff. Reserv-

ing for the moment the question of the legal effect of improper packing, there is initially a disputed question of fact as to the adequacy of the packing. An expert called by the defendant gave an opinion of inadequacy. I agree that the coils were not as carefully protected as would have been readily possible. I draw this conclusion not simply from the circumstance that damage occurred, but from the testimony as to the type of packing materials and the manner in which they were attached, and from an examination of photographs. On the other hand, I am satisfied that the goods were sufficiently packaged for ordinary handling. Since the defendant should have the burden of proof on this issue, and in the absence of any testimony as to foreseeable likelihood of rough handling with respect to goods of this character, I find that defendant has not sufficiently made out its case.

■■ With regard to the second shipment defendant again raises the question of title, stressing in addition to the matter of prepaid freight, the fact that the goods were sent on a bill of lading to the seller's order, together with a sight draft and indication that defendant was to be notified. This factor does not alter the result in any way, the seller being deemed to have only a security title, "if, except for the form of the bill, the property would have passed to the buyer on shipment of the goods * *." Uniform Bills of Lading Act, Mass.G.L. c. 108, § 38(b) (derived from St.1908, c. 237, § 20, the original Uniform Sales Act) (repealed effective October 1, 1958, by the Uniform Commercial Code, Acts 1957, c. 756, §§ 2, 21, M.G.L.A. c. 106 §§ 7–101 to 7–603.). Cf. Mass.G.L. c. 106, § 21 Rule 4(2), § 24(a). More fundamentally, the specific condition of sale which placed the risk of transit loss upon

---

2. No reply to the counterclaim was filed, but the defendant has not sought judgment on this basis and I shall overlook its absence.

3. The Uniform Sales Act is no longer the law in Massachusetts, former chapter 106 having been stricken, effective Oc-

tober 1, 1958, by the enactment of the Uniform Commercial Code, Acts 1957, c. 765, §§ 1, 21, M.G.L.A. c. 106 § 1–101 et seq. It remains the law of this case, however, and all citations of chapter 106 are to the Sales Act. It might be noted that no party has suggested that the law of some other state might be applicable.

the buyer makes it unnecessary to decide whether title had passed to the buyer. However, if the plaintiff is to have the advantage of this condition,[4] it must carry out its own contractual duties. Where the terms of the contract expressly or impliedly place the risk of transit loss upon the buyer, it is only proper that the seller exercise reasonable diligence in preparing the goods for shipment so as to minimize the buyer's risk. This principle has been recognized in a number of cases. See, e. g., Wilson v. Western Fruit Co., 11 Ind.App. 89, 38 N.E. 827; Butterworth & Lowe v. Cathcart, 168 Ala. 262, 52 So. 896; Brooks Shoe Mfg. Co. v. Denton, 57 N.M. 575, 260 P.2d 1109 (semble); cf. Finn v. Clark, 10 Allen 479, 92 Mass. 479.

█ It thus becomes necessary to determine whether, as to the second shipment, the plaintiff failed in its duty to pack the coils carefully. I believe that as to this shipment the defendant has met its burden of proof, the distinguishing factor being the notice available to the plaintiff by reason of the condition of the first shipment. Both shipments were damaged in approximately the same manner. I consider it a close question whether the original coils were adequately packed, and consequently find that if plaintiff chose to continue with this method after such notice, by which I mean knowledge, it was negligent.

█ This finding raises some difficult questions. The first is how to characterize plaintiff's conduct when it failed to package the goods properly. Defendant has argued that this constituted a breach of warranty. There is some plausibility to this in that the end result was that the goods failed to conform to the contract specifications upon arrival. On the other hand, such a promise does not easily fit within the standard categories of warranty, see Mass.G.L. c. 106, §§ 14–18, and it appears more reasonable to regard plaintiff's breach as arising out of an implied contractual duty. Cf. Falls Industries, Inc. v. Consolidated Chemical Industries, Inc., 5 Cir., 258 F.2d 277; Devinne Hallenbeck Co. v. Autotyre Co., 113 Conn. 97, 154 A. 170. Nevertheless it does not seem unreasonable, nor unfair to the plaintiff to adopt defendant's contention that its rights are to be the same as if plaintiff had committed a breach of warranty.

█ This defendant's manner of conducting its business leaves much to be desired. I could perhaps excuse it for not paying immediately even for the undamaged coils in the first shipment if it believed, as it may well have, that they were sent prematurely. But its conduct as to the second shipment was extraordinarily lax. It was well aware by that time of plaintiff's instructions not to accept damaged shipments from the carrier. However it did so, even though the damage was apparent. Even if this is not to be construed as a legal acceptance as against the plaintiff, and left defendant the right to rescind or return because of the breach of the obligation to pack carefully, the goods were received October 31, and the only evidence presented at trial of an offer to return was a letter dated January 31. This in the face of a letter from plaintiff on November 9 asking for payment for the first shipment, and again on December 5, to neither of which does there appear to have been a reply. Three months is a long time, and I find defendant did

---

4. Or, indeed, of the rule of law which places the risk of loss upon the buyer once title passes. "The seller must not only observe the express terms of the order or contract, but must also fulfill such obligations as the law imposes, irrespective of express bargain. Goods, therefore, must be packed in a reasonably careful manner, having in view the nature of the goods and the transit, or the property will not pass." 2 Williston, Sales § 278b (rev.ed.1948). Although the Sales Act makes no specific mention of a seller's duty to package goods for shipment, it does refer to the seller's obligation to put the goods in a "deliverable state," e. g., Mass.G.L. c. 106 § 21, Rule 2, § 32(5), to make a reasonable contract for their shipment on behalf of the buyer, id., § 35(2), and, in some circumstances, to notify the buyer so that he may insure. Id., § 35(3).

not notify plaintiff within a reasonable time of its election to rescind, Mass.G.L. c. 106, § 58(3), assuming that this breach gave it one. This finding takes care of the troublesome question of whether defendant could rescind and at the same time recover certain special damages which it is now seeking. See Ryder & Brown Co. v. E. Lissberger Co., 300 Mass. 438, 449, 15 N.E.2d 441, 118 A.L.R. 521. Defendant also acted too unseasonably to be permitted to refuse to accept the goods and sue for damages under Mass.G.L. c. 106, § 58(1) (c). See id., § 37.

■■ Defendant must therefore be content with keeping the goods and suing for general and special damages. Mass. G.L. c. 106, §§ 58(1) (b), 59. The primary measure of damages where the goods are retained is the difference between the value of what was promised and what was received. Mass.G.L. c. 106, § 58(7). While there was evidence that the government would not accept repaired coils, there was no evidence that these coils were without any commercial value.[5] The burden of proving damages on the counterclaim is on the defendant. With the evidence in this state, I cannot hold that the defendant is entitled to keep the goods and at the same time recover all or part of its payment for them. The mathematical extent of the loss is entirely unshown. This may be unfortunate for the defendant, but the defendant was well aware that it had produced no evidence.

I turn, therefore, to the special damages. The defendant, understandably enough, did not order further coils from the plaintiff, but obtained them elsewhere. This had two consequences. The coils which defendant bought elsewhere were somewhat different, and defendant had to buy three, rather than use plaintiff's first undamaged coil and add two. It might be claimed that the consequent unsuitability of plaintiff's undamaged coil was a proximate, foreseeable consequence of the damage suffered by the second shipment. However, if so, it should merely give defendant the right to return that coil, and defendant had the same burden to make a prompt offer to return as it did with the others, and failed to do so.

Defendant also incurred certain change-over expenses. Conversion had to be made of some already-installed equipment in order to accommodate the new coils purchased elsewhere. The cost of this conversion was $170. It further incurred labor costs as a result of attempting to make-do with plaintiff's materials, and for standby labor it had ready to install the second set. It is not entitled to claim as to the first set. Its evidence as to the extent of the lost time for the second set was sketchy and unsatisfactory. I allow $200.

Recapitulating, I find for plaintiff in the amount stated in its complaint, $2,-213. Interest will run only from October 31, 1956, due to the premature shipment. I find for the defendant on its counterclaim in the amount of $370, with interest from the same date. Plaintiff is hence entitled to judgment against Belanger in the net amount of $1,843, with interest from October 31, 1956.

■ I turn now to a separate defense, advanced by counsel for the surety. This is that since the three coils for which plaintiff is claiming were not installed in the building they do not constitute a liability of the prime contractor or the surety. It is true that there has been a decision to that effect in this district. United States for Benefit and Use of Westinghouse Electric Supply Co. v. Robbins, D.C.D.Mass., 125 F.Supp. 25 (alternative holding). With all respect, I believe this decision contrary to the underlying principle of the act, and I cannot follow it. The statute reads that liability on the bond is incurred to "Every person who has furnished * * * ma-

5. Defendant did offer such opinion by one witness, but he was not shown to have any proper qualifications, and I excluded it. It may be wondered if even a qualified expert could have had an opinion, the coils never having been unpacked.

terial in the prosecution of the work provided for in such contract * * *" 40 U.S.C.A. § 270b(a). By the great weight of authority, "the Miller Act permits recovery when the materials have been furnished in the prosecution of the work and does not require that the labor or material furnished be actually used or incorporated into the contract work." Fourt v. United States for Use of Westinghouse Electric Supply Co., 10 Cir., 235 F.2d 433, 435; see also United States ex rel. Purity Paint Products Corp. v. Aetna Casualty & Surety Co., D.C.D.Conn., 56 F.Supp. 431. What is meant by "furnishing?" The question here is whether material which is damaged in transit before received by the subcontractor, and which therefore does not comply with the contract and cannot be incorporated in the work, can be said to have been furnished because there was a provision in the contract which placed the risk of transit loss upon the subcontractor. I find no case dealing with this precise point. However, it has been held that if the supplier in good faith delivered proper material to the subcontractor's place of business where ordered, what occurred thereafter is no defense to the surety. Glassell-Taylor Co. v. Magnolia Petroleum Co., 5 Cir., 153 F.2d 527; United States for Use and Benefit of J. P. Byrne & Co. v. Fire Ass'n of Philadelphia, 2 Cir., 260 F.2d 541. If it is not necessary that the goods actually be incorporated in the structure, but only that they are appropriate goods, ordered and furnished for the job, I do not see that anything turns on where the loss occurs, provided that it is after the supplier has parted with control. It is not unusual to assume the risk of loss in shipment, and where, as is the case with respect to the first three coils, for which recovery is now sought, the loss was not the fault of the shipper, I will not hold that the surety's liability is not coextensive with that of the subcontractor. The surety has no other defenses. Consequently, the finding for the plaintiff must apply against all defendants.