**ARMOUR RESEARCH FOUNDATION OF ILLINOIS INSTITUTE OF TECHNOLOGY, Plaintiff-Appellant,**

v.

**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Defendant-Appellee.**

No. 13404.

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1961.

Rehearing Denied Feb. 1, 1962.

---

1. Now Chapter 428, Revised Statutes of Missouri 1949, § 428.020, V.A.M.S.

Timothy J. Murtaugh, Martin M. Nelson, Francis E. Sweet, Chicago, Ill., for plaintiff-appellant.

E. L. Ryan, Jr., Chicago, Ill., O. L. Houts, Chicago, Ill., of counsel, for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Plaintiff, Armour Research Foundation of Illinois Institute of Technology, brought this action against defendant, Chicago, Rock Island and Pacific Railroad Company, to recover damages to a shipment received by defendant for transportation in interstate commerce. Plaintiff alleges that on April 22, 1957, Southern Pacific Lines issued a uniform bill of lading on behalf of plaintiff for transportation from Inyokern, California, to Chicago, of a shipment described as: "1 Ea. Vehicle Motor Truck Freight Trailer Attached" and that defendant as connecting carrier delivered this shipment in a damaged condition. The defense was that the damage, if any, was caused by the plaintiff or its agents. Judgment was entered for defendant by the District Court after a non-jury trial. This appeal followed.

The vehicle in question was owned by Armour and employed for housing and transporting delicate electronic equipment which was used in making certain tests at the Naval Ordnance Test Station at China Lake, California. The exterior of the truck was rectangular in shape. It had a back door similar to an entrance door to a room and each side contained three panels in the shape of windows in addition to cable-entry portholes. The District Court found that the van of the truck was so unusual that it could be recognized as a special purpose truck.

On April 18, 1957, the Navy shipping supervisor at China Lake ordered a flat car from the Southern Pacific Lines preparatory to returning the vehicle to Armour in Chicago. Navy crews loaded and secured the padlocked vehicle on the flat car and transported it via Navy railroad to the Southern Pacific at Inyokern on April 22. A bill of lading was issued there by the agent of the Southern Pacific. Based on information supplied by Navy personnel, the agent listed only the truck and trailer on the bill. No mention was made of any equipment inside the truck. On April 23, the car was inspected by a member of the railroad's car department who reported that the blocking and tie cables used to secure the vehicle were "okay." The car was then released for movement. Subsequently, the car was transferred to the defendant's line at Tucumcari, New Mexico, and arrived at Chicago on April 30.

Neither the truck nor the trailer was damaged and the blocks and tie cables

were in place with the exception of one tie cable which was still fastened to the rear axle but was not tight. When plaintiff unlocked the truck it discovered that some of the electronic equipment, however, had been damaged. Upon learning that the truck was not empty defendant rerated the shipment to reflect the higher freight rate applicable to the carrying of a truck loaded with sensitive and delicate equipment, to wit, electronic devices and cameras. This higher rate was paid by plaintiff.

Section 20(11) of the Interstate Commerce Act, 49 U.S.C.A. § 20(11), codifies the common law rule that a common carrier is an insurer of the goods transported by it unless it is affirmatively shown that "the damage was occasioned by the shipper, acts of God, the public enemy, public authority, or the inherent vice or nature of the commodity." Secretary of Agriculture v. United States, 350 U.S. 162, 76 S.Ct. 244, 247, 100 L.Ed. 173.

The District Court found that the shipment was "misdescribed in that the bill of lading under which the shipment was being transported failed accurately to describe the shipment since it did not disclose to the carrier either the contents of the van of the motor truck or the delicate nature of the electronic equipment which constituted those contents." The Court concluded that this misdescription of the shipment resulted in a breach of contract of carriage by the shipper since the carrier did not know of or have an opportunity to examine the contents of the van.

Plaintiff contends that this conclusion is an improper interpretation of the law and maintains that a proper interpretation would lead to the conclusion that the railroad cannot escape liability for goods damaged in transit even though the goods are innocently misdescribed in the bill of lading. Plaintiff cites New York Central R.R. v. Goldberg, 250 U.S. 85, 39 S.Ct. 402, 403, 63 L.Ed. 857, in support of its proposition. In Goldberg a carton which actually contained furs, but which was innocently misdescribed in the bill of lading as containing dry goods, was lost in transit. The Supreme Court held that "a

misdescription of the character of the goods, not attributable to fraud, merely imposed upon the shipper or consignee an obligation to pay freight charges according to the character of the goods actually shipped, and did not affect the liability of the carrier for a failure to deliver the goods."

Defendant attempts to distinguish Goldberg from this case on the ground that the shipment in Goldberg was lost and therefore neither the box nor its contents, however described, were delivered; while on the other hand, in the instant case, the railroad delivered a truck and trailer as described in the bill of lading as well as the contents therein, except that the undescribed contents were damaged in transit.

■ In view of the fact that Section 20(11) of the Interstate Commerce Act imposes liability for loss *or* damage to goods and in view of the finding by the District Court that the misdescription was unintentional, we fail to see how Goldberg can be distinguished from the instant case. Accordingly, we are compelled to reverse.

■■ Plaintiff, however, to maintain this suit, must bear the burden of proof in two respects. First, it is established law that the burden rests on the shipper to prove delivery to the carrier in good condition. Hoover Motor Express Co. v. United States, 6 Cir., 262 F.2d 832. Second, when the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects in loading which are latent and concealed, and which cannot be discovered by ordinary observation on the part of the carrier. United States v. Savage Truck Line, Inc., 4 Cir., 209 F.2d 442, 44 A.L.R. 2d 984.

The District Judge at the end of the trial made an oral statement in which he said, *inter alia*, "I want to bring this to a head. I want to find and my judgment is that the evidence sufficiently shows that this went across the country once, and I think for ordinary transportation, it was sufficiently shipped and packed.

But I do not believe the evidence warrants the finding that it was sufficiently packed and fixed up for the type of electronic equipment, highly sensitive instruments that they were." However, this expression is nowhere recapitulated in the findings of fact and conclusions of law, as such. Furthermore, there is nothing contained in the findings with regard to the condition of the truck at the time it was accepted for shipment by the Southern Pacific, except for the cryptic statement, "Nothing was loose in the truck when delivered to the defendant."

In the absence of definitive and ultimate findings by the trial court on these two disputed issues of fact, we cannot say as a matter of law that plaintiff has carried the burdens to which we have referred. Accordingly, the case must be remanded for the purpose of enabling the trial court to make necessary findings vital to a decision of the cause. McClure v. O'Henry Tent & Awning Co., 7 Cir., 184 F.2d 636. Reversed and remanded.