ENRIQUE MORALES MEJÍAS, Plaintiff and Appellant, *v.* METROPOLITAN PACKING & WAREHOUSING COMPANY, Defendant and Appellee.

No. 178. Decided September 7, 1962.

4

*Luis A. Catoni Antonetti* for appellant. *Carlos Carrera Benítez* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Rigau.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The plaintiff delivered to the defendant firm certain house furniture and appliances to be transported for pay from Puerto Rico to New York. The defendant is engaged in this kind of business. While the defendant had this furniture stored in Puerto Rico they were destroyed by a fire. Notwithstanding the investigations made the origin of the fire was never discovered but it was learned that it began in the rear part of the warehouse where they had packing material such as stripped paper, sawdust, cardboard boxes and waxed paper.

The plaintiff filed a complaint for damages for $3,000 and the trial court dismissed it on the ground that the burden to prove the negligence charged "always" falls on the plaintiff and that the latter failed to do so. On his part the plaintiff maintains that the court erred inasmuch as the burden of proof changes of position in this kind of cases and rests with the carrier.

We agree with appellant. The error assigned was committed. Although the general rule is to the effect that negligence is not presumed and whoever alleges it should prove it, this rule has several exceptions, one of them being the one raised in this case, that is, when public carriers are involved. This exception, which is the rule applicable to public carriers, may be summarized by saying that they are liable for the loss of and damage to the things which they receive, unless they prove that the loss or damage arose from an accident or act of God. This rule is universal; it is sanctioned in civil law, in our positive law, in the Anglo-Saxon common law, in the legislation of the United States Congress, and in the Uniform Bill of Lading Act, as we shall see in the course of this opinion. In saying civil law we mean the

juridical principles of Roman, European, and South American origin, generally codified.

The aforesaid rule is not new. Since from all times man found it necessary to entrust to others his products and articles to be transported to other places, it was also necessary since that time to elaborate rules governing the rights, duties, and responsibilities of the bailees and of the public carriers. Thus, for example, in the Roman law we find provisions on this point in the Justinian's Digest, Book IV, Title 9, § 1 (year 553):

"That which shipmasters, captains, innkeepers or stablekeepers have received to safeguard its custody, unless they restore it, I will grant an action against them.
"The utility of this Edict is very great, because it is very often necessary to rely on the faithfulness of such persons and to entrust things to their custody. And let no one think that this Edict is established severely against them, for it is within their discretion not to receive anything, and unless this provision were established, an opportunity would be given them to conspire with thieves against persons whom they receive, since they do not even now refrain from schemes of this kind." [1]

A provision to that effect also appears in Institutes of Justinian, Book IV, Title 5, § 3. [2]

 In the common law the known antecedents are more recent.[3] Some authors place it in the 16th century [4] and others in the 17th century.[5] In any event in 1703 in *Coggs*

---

[1] For the Latin and Spanish texts see I GARCÍA DEL CORRAL, *Cuerpo del Derecho Civil Romano* 409 (Barcelona 1889). For the English text see SHERMAN, Epitome of Roman Law 217, § 425 (N.Y. 1937).

[2] I GARCÍA DEL CORRAL, *op. cit.* at p. 135.

[3] It is natural. When the English history commences, Roman Law, in the course of the preceding thousand years, had already made significant contributions to the universal law. PLUCKNETT, A Concise History of the Common Law 3 (4th ed., London 1948).

[4] HOLMES, The Common Law 181 (1946 ed., Boston 1946).

[5] II SHERMAN, Roman Law in the Modern World 386 (3d ed., N.Y. 1937); PLUCKNETT, *op. cit.* at p. 453.

v. *Bernard,* [6] Lord Holt discusses and clearly formulates the rule of strict responsibility of the carriers, except by an act of God and the King's enemies. The rule was definitively established in the English law in *Forward* v. *Pittard,*[7] in which case Lord Mansfield upheld the liability of the carrier (for articles destroyed by a fire as in the present case) irrespective of whether the carrier was negligent or not. In his opinion the distinguished judge used the key phrase which has been echoed in Anglo-Saxon law up to our days: a carrier is in the nature of an insurer.[8] For examples of recent judicial expressions of this concept, see *Armour Research Foundation* v. *Chicago, Rock Island and Pacific Railroad Co.,* 297 F.2d 176, 178 (1961) and *United States* v. *Mississippi Valley Barge Line Co.,* 285 F.2d 381, 388 (1960).

It would be unnecessarily burdensome to summarize here the evolution of the rule under discussion from its precedents down into present times. Let us go to the law in force.

The Civil Code in dealing with the hiring of work and services, and specifically the "Transportation by water and land of persons and things" provides that "carriers are ... liable for the loss of and damage to the things which they receive, unless they prove that the loss or damage arose from a fortuitous event or force majeure," and refers us to the provisions established by the Code of Commerce on this matter. Sections 1493 and 1494; 31 L.P.R.A. §§ 4141 and 4142.

In the provisions on transportation risks the Code of Commerce establishes the following in § 279, 10 L.P.R.A. § 1783, equivalent to § 361 of the Spanish Code:

"Merchandise shall be transported at the risk of the shipper, unless the contrary was expressly stipulated.

"Therefore, all damages and impairment suffered by the goods in transportation, by reason of accident, *force majeure,*

---

[6] 2 Lord Raymond's Rep. 909, 918; 92 Eng. Rep. 107, 112 (1703).

[7] I Term. Rep. 27, 33; 99 Eng. Rep. 953, 956 (1785).

[8] "El porteador es un asegurador de los bienes que se le han confiado."

or by virtue of the nature or defect of the articles, shall be for the account and risk of the shipper.

"The proof of these accidents is incumbent on the carrier."

And immediately in the following section:

"The carrier, however, shall be liable for the losses and damages arising from the causes mentioned in the foregoing section if it is proved that they occurred on account of his negligence or because he did not take the precautions usually adopted by careful persons, unless the shipper committed fraud in the bill of lading, stating that the goods were of a class or quality different from what they really were." 10 L.P.R.A. § 1784.

And in the next:

"With the exception of the cases prescribed in the second paragraph of section 1783 of this title [by reason of accident, *force majeure,* or by virtue of the nature or defect of the articles] the carrier shall be obliged to deliver the goods transported in the same condition in which, according to the bill of lading, they were at the time of their receipt, without any detriment or impairment, and should he not do so, he shall be obliged to pay the value of the goods not delivered at the point where they should have been and at the time the delivery should have taken place." 10 L.P.R.A. § 1785.

As we have seen, the shipper only assumes the risk in the case of an accident, act of God, or the inherent nature and vice of the things, and even in these cases the carrier shall be liable if the loss or damage occurred because he did not take the precautions usually adopted by a careful person or because of some other negligence on his part. 10 L.P.R.A. § 1784. Furthermore, in the case of an accident, act of God, or inherent nature and vice of the things, it is the carrier, and not the shipper, who has the burden of proof in these cases. 10 L.P.R.A. § 1783.

As we said in *Vidal & Co.* v. *American Railroad Co.,* 28 P.R.R. 190, 194 (1920):

"It will be seen from these statutes that although they apparently establish the rule that in the absence of a contrary

agreement the shipper assumes the risk of transportation, nevertheless they actually provide to the contrary, that is, that the carrier is liable for the loss of or damage to the merchandise delivered to him for transportation unless he proves that the destruction or damage was due to a fortuitous event, *vis major*, or the nature and defectiveness of the goods, and even then he is still liable if the shipper proves that the loss or damage was due to the negligence of the carrier or to his failure to take such precautions as a diligent person usually takes. Therefore, in accordance with these statutes, it is sufficient that the goods were delivered for transportation to make the carrier liable for their loss or damage, unless he proves that the loss or damage was due to some of the causes which exempt him from responsibility."

█ And citing a judgment of the Supreme Court of Spain, we said there at p. 195:

"Although a fire may be considered a fortuitous event or *vis major*, yet all fires have not that character . . . therefore the burning of merchandise delivered to a carrier for transportation by a fire of unknown origin can not be considered as *vis major* or a fortuitous event, because it can not be determined whether or not it could have been foreseen or prevented."

We need not elaborate further. For a discussion and conclusions in harmony with the foregoing see III–I GAY DE MONTELLÁ, *Código de Comercio Español Comentado* 260–271 (2d ed., Barcelona 1948) in his commentaries to §§ 361 and 362 of the Spanish Code of Commerce, equivalent to our aforesaid sections, and III LANGLE RUBIO, *Manual de Derecho Mercantil Español* 485–489 (Barcelona 1959).

In the common law the rule of strict responsibility of public carriers also admits the exceptions, as in the civil law, of accident and act of God and the inherent nature or vice of the things. Also as in the civil law, the burden of proof rests with the carrier. As stated in *Secretary of Agriculture* v. *United States*, 350 U.S. 162, 165; 100 L. Ed. 173, 178, footnote 9 (1956):

"It is conceded that § 20 (11) [49 U.S.C.] codifies the common-law rule making a carrier liable, without proof of negligence, for all damage to the goods transported by it, unless it affirmatively shows that the damage was occasioned by the shipper, acts of God, the public enemy, public authority, or the inherent vice or nature of the commodity." (Citations omitted.)

For other cases where the rule under consideration here applies see *Armour Research Foundation* v. *Chicago, R. I. and P.R.R. Co., supra* (1961) ; *Texas* v. *Empacadora*, 342 S.W.2d 195, 199 (1961) ; *United States* v. *Mississippi Valley Barge Line Co., supra* (1960) ; *Panhandle & Santa Fe R. Co.* v. *Trautmann*, 341 S.W.2d 504, 505 (1960) ; *Cia. de Vapores Ins. Co.* v. *Missouri–Pacific R. Co.*, 133 F. Supp. 942, 948 (1955) ; *Montgomery Ward* v. *Northern Pacific Terminal Co. of Oregon et al.*, 128 F. Supp. 475, 493–494, 505 (1953) ; *Seaboard Air Line* v. *Chanin*, 66 S.E.2d 113, 116 (1951) ; *Adams Express Co.* v. *Croninger*, 226 U.S. 491; 57 L. Ed. 314, 319 (1912) ; and *Galveston, H. & S.A.R. Co.* v. *Wallace*, 223 U.S. 481, 56 L. Ed. 516, 523 (1911).

■ The case law indicates that the rule imposing the burden of proof on the carriers, when the latter raise the permissible defenses (act of God, etc.) is based on the ground that it is the carrier who holds custody of the goods, it is he who has greater access to the evidence and at times the only one with such access, since the sender no longer holds the goods and it is very difficult for him and at times impossible, to know, and much less to prove, what happened. In addition to the cases cited, see I JONES, Evidence 39, § 19 (5th ed. 1958) ; MCCORMICK, Evidence 641, § 309 (1954) ; and the annotations in 53 A.L.R. 996 and 106 A.L.R. 1156. For the regulation adopted by the Uniform Bill of Lading Act, see 4 Uniform Laws Anno., Bills of Lading Act, § 11.

■ As to the federal legislation already mentioned, 49 U.S.C.A. § 20 (11), cited by one of the parties, and which ratifies the common law rule of the carriers' responsibility, *Secretary of Agriculture* v. *United States, supra* we note that

that federal legislation is not applicable to Puerto Rico by virtue of § 38 of the Federal Relations Act. Said § 20 (11) of 49 U.S.C.A. is part of the Interstate Commerce Act and with respect to this question the Federal Relations Act provides in said § 38 that "The Interstate Commerce Act and the several amendments made or to be made thereto . . . shall not apply to Puerto Rico." L.P.R.A., 1954, Vol. 1, p. 167.

One of the parties argues that the plaintiff–appellant changed his theory on review because in the trial court his theory was that the damage was due to the negligence of the defendant, and in this Court he maintains that he is not bound to prove the negligence of the carrier. As we said in *Coll* v. *Sec. of the Treas.*, 82 P.R.R. 26, 36 (1960), the question "involves but a question of law whose solution would be sufficient for this Court to render a final judgment. Consequently, we can not refuse to consider and decide it without failing in our essential duty of administering justice and finding the truth in each suit. The archaic rule that the theory of the case used in the trial court can never be changed on appeal or review has been dismissed by our case law." See also *Serra* v. *Transportation Authority*, 68 P.R.R. 581, 585 (1948), where we said that "this Court will do everything in its power to see that cases are decided on their own merits."

It is true that in medieval Europe litigation was waged on horseback and with a spear but the courts no longer administer justice as if it were a referee in a sporting game.[9]

---

[9] For a description of these medieval "procedures" the interested party may see MONTESQUIEU, *El Espíritu de las Leyes*, Book 28; and PLUCKNETT, *op. cit.* at p. 403. The Crown gave the equipment, trainers, and armourers and even ordered a scaffold for the magistrates and other officials to witness the battle. There is an English case, unique because of its recent date, *Ashford* v. *Thornton*, of the year 1818, reported in I. B. and Ald. 405; 106 Eng. Rep. 149 (K. B. 1818), in which the ancient right invoked by the defendant of showing his innocence in a trial by battle was upheld. In view of the fact that the accuser did not accept the challenge the defendant was set free. As a consequence of this anachronic case parliament hastened to abolish the procedure by law. 59 Geo. III, C. 46 (1819).

12

The judgment rendered in this case by the Superior Court, San Juan Part, on May 25, 1959, will be reversed; the complaint will be granted, and since the trial court concluded in its findings of fact that the plaintiff suffered losses as a result of the fire, but since it did not fix the amount of such losses, and not having before us the transcript of the evidence, the case will be remanded to the Superior Court, San Juan Part, so that the latter may determine the amount of damages suffered by the plaintiff.