UNITED STATES of America for the Use of TOM P. McDERMOTT, INC., an Oklahoma Corporation, Plaintiff,

v.

WOODS CONSTRUCTION COMPANY,. Inc., an Oklahoma Corporation, Smith Road Construction Company, Inc., an Oklahoma Corporation, and American Casualty Company of Reading, Penna.,. Defendants.

Civ. No. 5155.

United States District Court
N. D. Oklahoma.

July 10, 1963.

Clarence Warren, Tulsa, Okl., for plaintiff.

Houston, Klein & Davidson, Tulsa, Okl., for defendants.

DAUGHERTY, District Judge.

The Court, after trial, arguments and briefs in the above matter, makes the following Findings of Fact, Conclusions of Law and Decision:

## FINDINGS OF FACT

1. Defendant Woods Construction Company was the general contractor for the "Big Creek Section" (approximately 6 miles) of the relocation of Oklahoma State Highway No. 28 project.

2. Defendant Smith Road Construction Company was a subcontractor under Woods on this project.

3. Defendant American Casualty Company made and executed a payment bond on the project for Woods.

4. Plaintiff Tom P. McDermott, Inc., supplied tires, tubes and oil to and made tire repairs for Smith Road.

5. Woods and Smith Road in January, 1960, first entered into a subcontract whereby Smith Road was to perform the entire work. (See Defendants' Exhibit No. 11.) Apparently this arrangement ran afoul of the requirement that the general contractor cannot subcontract more than 50% of the project for thereafter Woods wrote the Resident Engineer on January 26, 1960, advising that it had sublet less than 50% of the total work to Smith Road. (See Plaintiff's Exhibit No. 2.) In this letter the items of the contract to be sublet to Smith Road were specified in an exhibit. No gravel was included. The Corps of En-

gineers were requested to approve this subletting. No official written approval is shown but it is assumed that the Corps of Engineers approved. No further written contract between Woods and Smith Road in keeping with the January 26, 1960, letter to the Resident Engineer was produced or put in evidence.

6. In undertaking the work required by this project by Woods as general contractor and Smith Road as subcontractor, William Smith, President of Smith Road was made superintendent of the entire project by and for Woods. The Board of Directors of Woods by resolution made William Smith the representative of Woods for the project. Woods had no equipment on the job at any time. All equipment used on the project was Smith Road equipment. In attempting to obtain rock or gravel for the job, Smith Road located its rock crusher first in a cut on the highway and then at another nearby location, both proving unsuitable. Finally Smith Road obtained the right to take needed rock from the Maude Lay quarry to which location its crusher was moved. Quarry employees were carried on Woods's payroll and were so reported to the U. S. Engineers.

7. Based on the foregoing, the Court finds that actually Smith Road as subcontractor performed all the work on the entire project beginning in January, 1960, and continuing until the project was completed in April or May, 1961. This finding embraces the quarry operation as a part of the project and not separate or divisible therefrom. This is so notwithstanding some rock or gravel from the quarry, the exact amount not being specifically shown, and therefore believed to be insignificant, found its way to other projects. The rock used in the project was provided by Smith Road as the subcontractor on the project and as a part of its subcontractor operation. The facts show that Smith Road did the rock work on the entire project, using its men and equipment, and including the quarrying of the rock, notwithstanding the outward attempt by Woods to assert that it did such work as a part of that portion of the project it retained as the general contractor.

8. Upon learning that Woods had the "Big Creek Section" project and that Smith Road was a subcontractor on the job, a salesman of Tom P. McDermott, Inc., called on Smith Road to obtain it as a customer for tires and tubes, tire repairs and other related services.

9. Such salesman called on Smith Road because of said project and its extent and duration and with the intent of furnishing products and services for such project.

10. McDermott had no knowledge that Smith Road was selling some rock from the final crusher location to other projects and had no knowledge or word from either Woods or Smith Road that they considered the quarry operation as distinct and separate from the Highway 28 project.

11. Smith Road used its moving equipment at both the quarry and on the road itself with most of it being used on the road. Some little of such equipment may have been used at the quarry only.

12. McDermott furnished tires and tubes, tire repairs and related services to Smith Road during the period of August, 1960, through January, 1961, for which it has not been paid. Most went to the highway location but some went to the quarry. Items furnished prior to August 19, 1960, have been paid and are not here involved. From the evidence it is impossible to obtain a specific and definite breakdown per item per location of delivery or repair. No one who testified seems to know for sure. This is to be expected due to William Smith being superintendent for the entire job and Smith Road equipment being used everywhere. It appears that the items furnished prior to November 26, 1960, (15 invoices) totalling $8,400.84, were delivered to the highway location. The items furnished on November 26, 1960, and thereafter (2 invoices) totalling $1,805.77 apparently were delivered to the rock quarry. The amount of McDermott's unpaid account with Smith Road sued on herein, is undisputed. Proper

and timely notice as required by the Miller Act was given by McDermott to Woods by letter dated 2/21/61 and delivered to Woods by registered mail on 2/23/61.

13. The project was completed in April or May, 1961, McDermott delivered its supplies or rendered its services until January, 1961, to Smith Road at the location of the project and the crusher operation was a part of the project, not distinct and separate therefrom. Under all the circumstances, including the length, normal duration and rough nature of the work of the project, McDermott in good faith reasonably believed and expected at the time of delivery that his supplies and services were being and would be used in the prosecution of the Highway 28 project, and further would be substantially consumed therein. Further the evidence indicates that Smith Road reasonably expected to substantially consume the supplies and services in this project. It was not anticipated by either that the Smith Road equipment would be diverted and removed from the project before completion or returned to the rental company prior thereto.

## CONCLUSIONS OF LAW

1. The Miller Act is to be liberally construed to effectuate the purpose of the Act as declared by the Congress. It was not designed to protect general contractors. It was designed to protect those who furnish materials or labor in the prosecution of the work upon a public project of the United States. St. Paul Mercury Indemnity Co. v. United States of America for Use of Jones (C.C.A.–10 Cir.), 238 F.2d 917.

2. A surety under the Miller Act is liable to one who furnishes materials (tires, etc.) in the prosecution of the public work involved even though such materials were not installed in the work (highway). United States of America for Use and Benefit of National United States Radiator Corp. v. D. C. Loveys Co., et al., (U.S.D.C.-Mass.), 174 F.Supp. 44.

3. In dealing with materials furnished to a project, such as tires and tubes, oil and tire repairs, as here involved, which do not end up in the finished project itself the matter of substantial consumption in the project is a significant factor. However, since the supplier of such materials does not control the contractor or subcontractor or his day to day operations, it would be an impossible burden and at the same time defeat the manifest purpose of the Act to require the one furnishing such materials to show that they in fact were substantially consumed on the project involved and to which delivered and not in some manner or for some reason diverted to some other project by the contractor or subcontractor. Therefore, the proper test to be applied is whether or not in a particular case and bonded project there is a reasonable and good faith expectation by the supplier at the time of delivery that the materials under all the circumstances would be substantially used up in the project under way. If so, the surety is liable. If not, there is no liability on the part of the surety. United States of America for Use and Benefit of J. P. Byrne & Co. v. Fire Association of Philadelphia, (C.C.A.–2d Cir.), 260 F.2d 541; United States of America for Use and Benefit of Westinghouse Electric Supply Co. v. Endebrock-White Company (C.C.A.–4 Cir.), 275 F.2d 57, 79 A.L.R.2d 836

## DECISION

Based on the foregoing Findings of Fact and Conclusions of Law, judgment is rendered for the plaintiff allowing recovery for the amount sued for against the defendants. Counsel for plaintiff will prepare an appropriate Journal Entry of Judgment for my signature and filing herein.