James H. Boomer, J.
The plaintiff, Standard Brands Chemical Industries, Inc., purchased from the defendant the Pfaudler Co., a division of Sybron Corp., a reactor for the mixing of chemicals. The reactor was loaded by the defendant seller at its plant in Rochester, New York onto a trailer owned by the defendant carrier, Pilot Freight Carriers, Inc., for shipment by motor freight to the plaintiff in Kensington, Georgia. When the reactor arrived in Kensington, the plaintiff discovered that the glass lining of the reactor was damaged and it brings this action against both the seller and the carrier to recover the cost of repairing the damage. It has been stipulated that the cost of repair was $16,920.30. The matter was tried without a jury and this memorandum constitutes the decision of the court pursuant to CPLR 4213.
In its cause of action against the carrier, the plaintiff alleges that when the reactor was delivered to the carrier in Rochester, New York, it was in good condition, but when it arrived in Kensington, Georgia it was damaged. The plaintiff relies upon the general rule that “ a common carrier is an insurer against the loss of, or damage to, property received by it for transportation, except for loss or damage arising from an act of God, a public enemy, the inherent nature of the goods shipped, the conduct of the shipper, or the act or mandate of public authority ” (7 N. Y. Jur., Carriers, § 178; see, also, Secretary of Agriculture v. United States, 350 U. S. 162; Armor Research Foundation v. Chicago, Rock Is. & Pacific R. R. Co., 297 F. 2d 176, 178).
The carrier responds that the damage was caused through the fault of the shipper in improperly preparing the reactor for shipment and, that the plaintiff has failed to sustain its burden of proving that the reactor was properly packed and braced for shipment.
The reactor consists of a glass-lined vessel approximately 6 feet in diameter and 20 feet tall, weighing 21,500 pounds. Suspended inside the vessel is an agitator consisting of a metal shaft approximately 18 feet high with anchor-shaped blades attached to the bottom of the shaft. The agitator is fastened to the vessel at the top only, where the end of the shaft is inserted into a gear box. There is a space of approximately *1031 four inches between the bottom of the agitator and the bottom of the glass-lined vessel and approximately three and one-half inches between the ends of the agitator blades and the sides of the vessel.
When in operation, the reactor stands in an upright position so that the shaft of the agitator is perpendicular to the ground. But when the reactor is shipped by trailer it is tipped on its side so that the shaft of the agitator is then parallel to the ground. To hold the unfastened end of the agitator in place inside the vessel and to prevent the agitator blades from striking and damaging the glass liner when the reactor was being shipped, a wooden bracing was placed near the unfastened end of the agitator. This bracing consisted, in substance, of a collar around the agitator shaft with four lengths of two by six-inch lumber, each radiating from the collar to the wall of the vessel, one pointing in a 12 o’clock position, one in a 3 o’clock position, one in a 6 o ’clock position and one in a 9 o ’clock position. Prior to the installation of the bracing, each of these lengths were separated into two pieces with a diagonal cut, so that each end piece could be extended along the diagonal cut to fit snugly against the glass lining of the vessel. Inside the vessel, both pieces of each length of lumber were nailed together along the diagonal cut. Wooden cleats were nailed on both the top and bottom of the two by six-inch lengths to further join these lengths at the diagonal cuts.
This wooden bracing was installed inside of the- reactor by employees of the shipper at the shipper’s plant prior to the loading of the reactor on the carrier’s trailer. Access to the inside of the reactor was gained by a hatch cover in the top of the vessel and prior to loading, employees of the shipper closed and secured the hatch cover with 16 to 20 bolts. WTien the hatch cover was removed by employees of the plaintiff at Kensington, Georgia, they discovered that the end piece of the wooden length pointing in the 6 o’clock position had separated at the diagonal cut and this end piece and one of the wood cleats attached to it were loose inside the vessel. This permitted the agitator blades to scrape against and damage the glass liner of the vessel.
The defendant shipper contends that the bracing was proper, while the defendant carrier contends that the bracing was improper and the damage to the reactor was caused by that improper bracing.
Normally, the burden of proof is upon the carrier to show that the damage resulted from one of the excepted causes, such *1032 as the fault of the shipper (Pereira v. American Ry. Express Co., 207 App. Div. 692; Perkel v. Pennsylvania R. R. Co., 148 Misc. 284; Wald-Green Food Corp. v. Acme Fast Frgt., 200 Misc. 679). But where the loading and bracing are done by the shipper, it, and not the carrier, assumes responsibility for all concealed defects in the loading and bracing and the burden of proof is then upon the plaintiff to show that the goods were properly loaded and braced (Banner Mfg. Co. v. Long Is. R. R. Co., 277 App. Div. 142; Fuller Co. v. Pennsylvania R. R. Co., 61 Misc. 599; Armour Research Foundation of Ill. Inst, of Technology v. Chicago, Rock Is. & Pacific R. R. Co., 311 F. 2d 493). And this is so whether the plaintiff is the shipper or, as in this case, the purchaser (Orunsten v. New York Cent. R. R. Co., 179 App. Div. 465).
In the Banner case {supra) the shipper inspected, packed and loaded cans of brake fluid into box cars and then sealed the doors of the cars. ■ The Appellate Division held that, under the circumstances, it was error for the Trial Judge to refuse to charge the jury that the shipper had the burden of proving that the goods were properly packed and loaded. In the Armour case {supra, p. 494) the court noted that “ the truck was padlocked so it could not be entered. * * * These circumstances, we believe, relieved the carrier of any obligation to ascertain the contents of the truck or to discover whether the contents were properly packaged for rail shipment. • They further placed upon the plaintiff the burden of proving that the packaged contents were properly loaded and secured within the truck for rail shipment.”
Here, the shipper did the loading, supplied the interior bracing and sealed the only means of access to the interior of the reactor. Under these circumstances the burden of proof is upon the plaintiff, and not the carrier, to show that the reactor was properly braced for shipment. I find that the plaintiff has not sustained this burden. On the contrary, I find that the bracing of the agitator was defective and because of this defective bracing the agitator scraped against and damaged the glass lining of the reactor.
The proof shows that when the reactor arrived in Kensington, Georgia, the exterior bracing, holding the reactor to the trailer, was in good condition and there was no apparent damage to the trailer or the exterior of the reactor. There was no evidence of any accident or unsual incident involving the trailer during its journey from Rochester to Kensington. Moreover, there was proof that, normally, four nails were used to join together the diagonally-cut lengths of bracing. Two nail holes *1033 in the loose and separated end of the bracing appeared to be too close to the lower edge of the wood at a point where the nails went through a very thin section of wood. And two other nails were placed very close together and the ends of these nails appeared to converge so as to enter the adjoining piece of wood almost at the same spot. Since the damage to the reactor was caused by the defective bracing, judgment must be granted in favor of the carrier against the plaintiff.
Defendant shipper offered testimony that it shipped hundreds of similar reactors with the same type of interior bracing and it received no claims for damage. This testimony is received (Stein v. Trans World Airlines, 25 A D 2d 732). This evidence tends to show that the basic design of the bracing was adequate, but it does not persuade me that the bracing was properly installed in this instance.
In its cause of action against the shipper, the plaintiff alleges that the shipper warranted that the reactor would be properly packaged for shipment and the shipper breached that warranty. The shipper denies that there was any warranty either express or implied. In his brief, counsel for the shipper states, “ The contract of sale in this case called for the manufacture by Sybron of a certain glass lined reactor with an agitator for the use of Standard Brands. The contract did not provide for the sale of any bracing, either internal or external, to the plaintiff.” Counsel further argues that an implied warranty of bracing for shipment is not encompassed within the implied warranty provisions of the Uniform Commercial Code (-§§ 2-314, 2-315) and that this is so because the preparation of bracing and loading constitutes a service and not a sale of goods as contemplated by the Uniform Commercial Code.
With this reasoning, I do not agree. The bracing installed inside the reactor was just as much a part of the sale of goods as the reactor itself (Haller v. Rudmann, 249 App. Div. 831; Pettella v. Corp Bros., 268 A. 2d 699 [R I]). When a shipper delivers goods for shipment, it impliedly warrants that the goods are fit for shipment and are properly packed (77 C. J. S., Sales, § 326; Eastern Motor Express v. A. Maschmeijer, Jr., Inc., 247 F. 2d 826). In this case, such an implied warranty falls under the provisions of the Uniform Commercial Code whether we consider it to be an implied warranty of merchantability that the goods were adequately contained or packaged as the agreement required (§ 2-314, subd. [2], par. [e]) or an implied warranty that the bracing was fit for the purpose for which it was required (§ 2-315).
*1034 Here the contract of sale contemplated that the reactor be shipped over some distance to the purchaser. Under these circumstances, the sale required that the seller package the goods for shipment, thereby creating an implied warranty that the goods be adequately packaged (Uniform Commercial Code, § 2-314, subd. [2], par. [e]). Furthermore, the plaintiff relied upon the seller’s skill to prepare the reactor for shipment, hence the seller warranted that the reactor, including the bracing, was suitable and adequate for the purpose of shipment (Uniform Commercial Code, § 2-315; Fraley v. Ford, 81 Ariz. 268). Nor was the shipper’s obligation to properly package limited to the implied warranty created by the Uniform Commercial Code. When the shipper sold the reactor for shipment to the plaintiff, the shipper assumed an implied contractual duty to properly prepare it for shipment. Its liability for a breach of this duty is the same as though it had committed a breach of warranty (United States v. Loveys Co., 174 F. Supp. 44, 47).
I find that the shipper, when it loaded the reactor on the trailer for shipment to the plaintiff, impliedly warranted that the reactor was properly braced for shipment by motor freight. Since I have already determined that the internal bracing was defective and such defective bracing caused the damage to the reactor, it follows that the shipper has breached that warranty. Judgment is granted, therefore, to the plaintiff against the defendant shipper in the amount of $16,920.30 with interest from June 5, 1967, the date the goods were received by the plaintiff and found to be damaged (CPLR 5001).